# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION AT DAYTON

| | | |
|---|---|---|
| CARRIE S.,[1] | : | Case No. 3:22-cv-00250 |
| Plaintiff, | : | |
| | : | Magistrate Judge Caroline H. Gentry |
| vs. | : | (by full consent of the parties) |
| | : | |
| COMMISSIONER OF THE SOCIAL SECURITY ADMINISTRATION, | : | |
| | : | |
| Defendant. | : | |

## DECISION AND ORDER

Plaintiff filed an application for Supplemental Security Income (SSI) on April 27, 2020. Plaintiff's claim was denied initially and upon reconsideration. After a hearing at Plaintiff's request, the Administrative Law Judge (ALJ) concluded that Plaintiff was not eligible for benefits because she was not under a "disability" as defined in the Social Security Act. The Appeals Council denied Plaintiff's request for review. Plaintiff subsequently filed this action.

Plaintiff seeks an order remanding this matter to the Commissioner for the award of benefits or, in the alternative, for further proceedings. The Commissioner asks the Court to affirm the non-disability decision. For the reasons set forth below, this Court REVERSES the Commissioner's decision and REMANDS for further proceedings.

---

[1] *See* S.D. Ohio General Order 22-01 ("The Committee on Court Administration and Case Management of the Judicial Conference of the United States has recommended that due to significant privacy concerns in social security cases federal courts should refer to claimants only by their first names and last initials.").

**I.    BACKGROUND**

Plaintiff asserts that she has been under a disability since January 31, 2020.[2] On the SSI application date, she was forty-eight years old. Accordingly, Plaintiff was considered a "younger person" under Social Security Regulations. *See* 20 C.F.R. § 416.963(c). Plaintiff has a "limited education." *See* 20 C.F.R. § 416.964(b)(3).

The evidence in the Administrative Record ("AR," Doc. No. 8) is summarized in the ALJ's decision (AR, Doc. No. 8-2 at PageID 39-54), Plaintiff's Statement of Errors ("SE," Doc. No. 9), the Commissioner's Memorandum in Opposition ("Mem. In Opp.," Doc. No. 10), and Plaintiff's Reply Memorandum ("Reply," Doc. No. 11). Rather than repeat these summaries, the Court will discuss the pertinent evidence in its analysis below.

**II.    STANDARD OF REVIEW**

The Social Security Administration provides SSI to individuals who are under a "disability," among other eligibility requirements. *Bowen v. City of New York,* 476 U.S. 467, 470 (1986); *see* 42 U.S.C. §§ 402, 423(a)(1), 1382(a). The term "disability" means "the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. § 416.905(a).

---

[2] Regardless of the actual or alleged onset of disability, an SSI claimant is not entitled to SSI benefits prior to the date that the claimant files an SSI application. Thus, the relevant period of consideration in this case begins on April 27, 2020. *See* 20 C.F.R. § 416.335; *Koster v. Comm'r of Soc. Sec.*, 643 Fed. Appx. 466, 478 (6th Cir. 2016) ("For purposes of SSI, which is not retroactive, the relevant period here is . . . the date [Plaintiff] filed his protective application.")

This Court's review of an ALJ's unfavorable decision is limited to two inquiries: "whether the ALJ applied the correct legal standards and whether the findings of the ALJ are supported by substantial evidence." *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009); *see* 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive."). "Unless the ALJ has failed to apply the correct legal standards or has made findings of fact unsupported by substantial evidence," this Court must affirm the ALJ's decision. *Emard v. Comm'r of Soc. Sec.*, 953 F.3d 844, 849 (6th Cir. 2020). Thus, the Court "may not try the case *de novo*, nor resolve conflicts in evidence, nor decide questions of credibility." *Id*.

"Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains 'sufficien[t] evidence' to support the agency's factual determinations." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (citation omitted). This limited standard of review does not permit the Court to weigh the evidence and decide whether the preponderance of the evidence supports a different conclusion. Instead, the Court is confined to determining whether the ALJ's decision is supported by substantial evidence, which "means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id*. (citation omitted). This standard "presupposes that there is a zone of choice within which the decisionmakers can go either way, without interference by the courts." *Mullen v. Bowen,* 800 F.2d 535, 545 (6th Cir. 1986). Thus, the Court may be required to affirm the

ALJ's decision even if substantial evidence in the record supports the opposite conclusion. *Key v. Callahan,* 109 F.3d 270, 273 (6th Cir.1997).

The other line of judicial inquiry—reviewing the correctness of the ALJ's legal criteria—may result in reversal even when the record contains substantial evidence supporting the ALJ's factual findings. *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009). "[E]ven if supported by substantial evidence, 'a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.'" *Id.* (citations omitted). Such an error of law will require reversal even if "the outcome on remand is unlikely to be different." *Cardew v. Comm'r of Soc. Sec.*, 896 F.3d 742, 746 (6th Cir. 2018) (internal quotations and citations omitted).

**III.    FACTS**

    **A.    The ALJ's Factual Findings**

The ALJ was tasked with evaluating the evidence related to Plaintiff's application for benefits. In doing so, the ALJ considered each of the five sequential steps set forth in the Social Security Regulations. *See* 20 C.F.R. § 416.920. The ALJ made the following findings of fact:

> Step 1:    Plaintiff has not engaged in substantial gainful activity since April 27, 2020, the application date.
>
> Step 2:    She has the following severe impairments: chronic ischemic heart disease, hypertension, peripheral neuropathy, right carpal tunnel syndrome, migraines, ventral hernia status/post repair, gastroesophageal reflux disease, obesity, depressive disorder, anxiety disorder, and post-traumatic stress disorder.

|  |  |
|---|---|
|  | She has the nonsevere impairment of right rotator cuff tendonitis. |
| Step 3: | She does not have an impairment or combination of impairments that meets or equals the severity of one in the Commissioner's Listing of Impairments, 20 C.F.R. Part 404, Subpart P, Appendix 1. |
| Step 4: | Her residual functional capacity (RFC), or the most she can do despite her impairments, *see Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 239 (6th Cir. 2002), consists of sedentary work as defined in 20 C.F.R. § 416.967(a), subject to the following limitations: "(1) never climb ladders, ropes and scaffolds; (2) occasionally climb ramps and stairs, stoop, kneel, crouch, and crawl; (3) frequently handle and finger with the right upper extremity; (4) occasional exposure to extreme cold, extreme heat, wetness, humidity, dusts, odors, fumes, and pulmonary irritants; (5) avoid exposure to unprotected heights and moving mechanical parts; (6) able to perform tasks that are not at a production-rate pace; (7) occasional interaction with supervisors, co-workers and the general public; and (8) able to tolerate occasional changes to a routine work setting defined as 1-2 per week." |
|  | She is unable to perform any of her past relevant work. |
| Step 5: | Considering Plaintiff's age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that she can perform. |

(AR, Doc. No. 8-2 at PageID 42-54.) These findings led the ALJ to conclude that

Plaintiff does not meet the definition of disability and so is not entitled to benefits. (*Id.* at

PageID 54.)

**B.     The ALJ's Evaluation of Plaintiff's Right Shoulder Impairment**

As noted above, the ALJ concluded that Plaintiff's right shoulder impairment was

nonsevere. The ALJ explained:

In addition to the severe impairments noted above, [Plaintiff] has the medically determinable impairment of right rotator cuff tendinitis. In late July 2020, Joni Koren, D.O., assessed [Plaintiff] with right arm pain (Exhibit C10F at 24). The next month, Corey Ellis, M.D., assessed the

5

claimant with a right shoulder strain (Exhibit C6F at 10). In November 2020 and March 2021, Eric W. Fester, M.D., diagnosed [Plaintiff] with right shoulder pain and right rotator cuff tendonitis (Exhibits C8F at 15, C14F at 3). Pursuant to Dr. Fester's diagnoses, Jeffrey Aaron James, D.O., and Aloiya Rae Earl, M.D., performed right subacromial bursa injections (Exhibits C8F at 7-8, C14F at 1-2). In April 2021, Dr. Fester diagnosed [Plaintiff] with right rotator cuff tendonitis and a tear (Exhibit C18F at 8). In May 2014, Dr. Fester performed an arthroscopic right rotator cuff repair, decompression, and debridement, noting pre- and postoperative diagnoses of a right rotator cuff tear (Exhibit C17F at 24-5). [Plaintiff's] right shoulder issues have not yet lasted the twelve months required to be considered a severe impairment, and given the recent repair operation, it is not clear from the record that the condition will continue to limit [Plaintiff] for the required period. In addition, during a November 2020 consultative examination done at the request of the Division of Disability Determination (DDD), B.T. Onamusi, M.D., noted that [Plaintiff] had full strength and range of motion in all extremities, joints, and spinal regions (Exhibit C7F at 1-5). I therefore find [Plaintiff's] right rotator cuff tendonitis to be a non-severe impairment for the purposes of this decision under the Social Security Act. I note, however, that as a result of [Plaintiff's] carpal tunnel syndrome (CTS), I have still imposed limitations on the use of [Plaintiff's] right hand that should accommodate any lingering effects of this injury.

I considered all of [Plaintiff's] medically determinable impairments, including those that are not severe, when assessing [Plaintiff's] residual functional capacity.

(AR, Doc. No. 8-2 at PageID 42-43.)

## IV. LAW AND ANALYSIS

Plaintiff asserts the following errors:

1. The ALJ errs in his misapplication of *Drummond*.[3]

2. The ALJ errs in his consideration of the opinion evidence of record.

3. The ALJ's decision is not supported by substantial evidence and the Commissioner's position is not substantially justified.

---

[3] *Drummond v. Commissioner*, 126 F.3d 837 (6th Cir. 1997)

(SE, ECF No. 9 at PageID 6111.) Plaintiff also asserts that the ALJ erred by finding that Plaintiff's right shoulder impairment was nonsevere at Step Two. (Reply, Doc. No. 11 at PageID 636-37.) Finding error in the ALJ's evaluation of Plaintiff's right shoulder impairment, the Court does not address Plaintiff's other assigned errors and instead instructs the ALJ to address all of them on remand.

A.  **Applicable Law**

An ALJ evaluates the "medical severity" of a claimant's impairments at Step Two of the sequential evaluation. 20 C.F.R. § 404.1520(a)(4)(ii.) An impairment or combination of impairments is "severe" if it "significantly limits [an individual's] physical or mental ability to do basic work activities."[4] 20 C.F.R. § 404.1520(c). Conversely, an impairment or combination of impairments is not severe if the "medical evidence establishes only a slight abnormality or a combination of slight abnormalities which would have no more than a minimal effect on an individual's ability to work . . . ." Social Security Ruling (SSR) 85-28, 1985 WL 56856, at *3 (January 1, 1985).[5]

The claimant bears the burden of showing that she has a severe impairment—and that the impairment meets the twelve-month duration requirement. *Harley v. Comm'r of Soc. Sec.*, 485 F. App'x 802, 803 (6th Cir. 2012) (citing *Her v. Comm'r of Soc. Sec.*, F.3d 388, 391 (6th Cir. 1999); *Higgs v . Bowen*, 880 F.2d 860, 863 (6th Cir. 1988); *see also* 20

---

[4] "Basic work activities" include the abilities and aptitudes necessary to perform most jobs, such as the ability to perform physical functions and the mental abilities to carry out simple instructions, use judgment, respond to supervisors and coworkers, and deal with changes in a routine work setting. 20 C.F.R. § 404.1522(b).

[5] Although SSRs do not have the same force and effect as statutes or regulations, they are binding on all components of the Social Security Administration. 20 C.F.R. § 402.35(b)(1).

C.F.R. § 404.1520(a)(4)(ii). To meet the duration requirement, an impairment "must have lasted or must be expected to last for a continuous period of at least 12 months." 20 C.F.R. § 404.1509; *Harley*, 485 F. App'x at 803. Notably, the claimant's burden of establishing a "severe" impairment at Step Two is a "de minimis hurdle in the disability determination process." *Higgs v. Bowen*, 880 F.2d 860, 862 (6th Cir. 1988). The goal of the test is to "screen out totally groundless claims." *Farris v. Sec'y of Health & Human Servs.*, 773 F.2d 85, 89 (6th Cir. 1985).

    **B.    The ALJ Misapplied The Governing Regulation When Analyzing Plaintiff's Right Shoulder Impairment**

The ALJ acknowledged that primary care physician Dr. Koren diagnosed right arm pain on July 23, 2020. (AR, Doc. No. 8-7 at PageID 439-40; AR, Doc. No. 8-2 at PageID 42.) The ALJ issued his decision a little less than twelve months later, on July 9, 2021. (AR, Doc. No. 8-2 at PageID 54.) The ALJ concluded: "[Plaintiff's] right shoulder issues have not yet lasted the twelve months required to be considered a severe impairment, and given the recent repair operation, it is not clear from the record that the condition will continue to limit the claimant for the required period." (*Id.* at PageID 42.)

The ALJ misapplied the standard for determining whether an impairment meets the duration requirement. Section 404.1509 provides that an impairment "must have lasted or ***must be expected to last*** for a continuous period of at least 12 months" to meet the duration requirement. 20 C.F.R. § 404.1509 (emphasis added). *See Harris v. Sec'y of Health & Hum. Servs.*, No. 87-1997, 1988 WL 122960, at *1 (6th Cir. Nov. 16, 1988) (explaining that "an ALJ who hears a claim before the twelve-month period has expired

8

must make a determination whether the claimant's impairment may be expected to last for the requisite time"). But the ALJ did not consider whether the condition was *expected* to last for the requisite time period. Instead, the ALJ considered only whether the record was "clear" that Plaintiff's right shoulder condition "*will* continue" to cause limitations. Because the ALJ's conclusion is based upon an incorrect interpretation of the applicable regulation, reversal is required.

        **C.     The ALJ's Conclusion That Plaintiff's Right Shoulder Impairment Is Nonsevere Is Not Supported By Substantial Evidence.**

Reversal is also required because substantial evidence does not support the ALJ's conclusion that Plaintiff's right shoulder impairment is nonsevere. The ALJ relied on one medical finding to reach this conclusion:

> In addition, during a November 2020 consultative examination done at the request of the Division of Disability Determination (DDD), B.T. Onamusi, M.D., noted that [Plaintiff] had full strength and range of motion in all extremities, joints, and spinal regions (Exhibit C7F at 1-5). I therefore find [Plaintiff's] right rotator cuff tendonitis to be a non-severe impairment for the purposes of this decision under the Social Security Act. I note, however, that as a result of [Plaintiff's] carpal tunnel syndrome (CTS), I have still imposed limitations on the use of [Plaintiff's] right hand that should accommodate any lingering effects of this injury.

(AR, Doc. No. 8-2 at PageID 42.)

Most of the medical evidence compels the opposite conclusion. When Dr. Koren initially diagnosed right arm pain in July 2020, Plaintiff reported decreased range of motion and complained of tenderness in the biceps. (AR, Doc. No. 8-7 at PageID 439-40.) When sports medicine physician Corey Ellis, M.D. diagnosed a right shoulder strain a few weeks later on August 12, 2020, he documented tenderness of the pectoralis major

9

insertion, coracobrachialis insertion, and biceps muscle belly, as well as pain with resisted adduction and internal rotation. (AR, Doc. No. 8-7 at PageID 360-61.) A November 2020 right shoulder ultrasound showed suspected partial tears to the infraspinatus and supraspinatus tendons. (*Id.* at PageID 388.) Orthopedist Dr. James administered a right shoulder corticosteroid injection at that time. (*Id.* at PageID 388-89.) A subsequent March 2021 right shoulder ultrasound showed high-grade, partial-thickness tears of the supraspinatus and infraspinatus tendons that had progressed since the prior imaging. (*Id.* at PageID 523-24.) Orthopedist Dr. Earl administered a second right shoulder injection. (*Id.* at PageID 532.) At an April 2021 follow-up visit, the examination showed full range of motion but with mild weakness in forward elevation and external rotation. (*Id.* at PageID 548.) Significantly, Dr. Earl recommended arthroscopic surgery at that time. (*Id.* at PageID at 549-50.) Plaintiff underwent right shoulder arthroscopic rotator cuff repair surgery on May 14, 2021. (*Id.* at PageID 587-88.)

     Plaintiff started post-operative physical therapy on May 17, 2021, approximately ten months after the initial diagnosis, and her treatment plan estimated six to twelve weeks of physical therapy. (AR, Doc. No. 8-7 at PageID 595, 598.) The examination during the initial post-surgical physical therapy session in May 2021 showed decreased range of motion, decreased strength, poor posturing, and poor tolerance to positioning. (*Id.* at PageID 597.) Plaintiff reported only some improvement in her pain at the next physical therapy session on June 3, 2021. (*Id.* at PageID 599.) Although physical therapist Cory Frank, P.T. documented improved range of motion, he also noted that Plaintiff complained of increased pain and exhibited muscle guarding during range of

10

motion testing. (*Id.* at PageID 601.) At the next—and most recently documented—visit on June 8, 2021 (approximately eleven months after the initial diagnosis), Plaintiff reported continued right shoulder pain. (*Id.* at PageID 602.) Mr. Frank noted progress in external rotation but regression in flexion, as well as severe anterior translation of the glenohumeral joint with reports of anterior pain. (*Id.* at PageID 603-04.) Mr. Frank also noted that he ended the session early due to "significant muscle guarding, increased pain, and poor tolerance to any exercise or manual treatments." (*Id.* at PageID 604.) Two days later, Plaintiff testified at the June 2021 hearing that she was still experiencing significant shoulder pain and had difficulty moving her arm. (AR, Doc. No. 8-2 at PageID 71.) Plaintiff also stated that Mr. Frank had postponed any further physical therapy sessions until she saw her surgeon, because the shoulder "was not healing as much as they [woul]d like to with [physical therapy]." (*Id.* at PageID 72.)

As noted, the ALJ relied on just a single examination that showed normal findings to conclude that Plaintiff's right shoulder condition was nonsevere. (*See* AR, Doc. No. 8-7 at PageID 370-77.) But the ALJ ignored numerous other examinations and testing that showed abnormal right shoulder findings. The normal examination finding cited by the ALJ is contradicted by the ultrasound showing suspected partial tears and the initial corticosteroid injection, all of which occurred in November 2020. It is also contradicted by the March 2021 ultrasound showing that the tears had progressed, the administration of a second corticosteroid injection, and arthroscopic surgery in May 2021. And it is further contradicted by the physical therapy records that show continued difficulties with pain and range of motion—to the extent that her physical therapist ended the June 8, 2021

11

session early. A reasonable mind would not rely on a November 2020 examination to accept a conclusion that Plaintiff's right shoulder impairment was *expected* to improve within a few weeks after the June 2021 hearing, much less that the condition would cause no more than a minimal effect on Plaintiff's ability to perform basic work activities. *See Biestek*, 139 S. Ct. at 1154; 20 C.F.R. § 404.1520(c); SSR 85-28.

The ALJ's failure to consider this evidence signifies an impermissibly selective review of the record. *E.g.*, *Minor v. Comm'r of Soc. Sec.*, 513 Fed. App'x 417, 435 (6th Cir. 2013) (reversing where the ALJ "cherry-picked select portions of the medical record"). An ALJ is not required to directly address every piece of evidence submitted by a party. *Kornecky v. Comm'r of Soc. Sec.,* 167 F. App'x 469, 508 (6th Cir. 2006). However, the ALJ's failure to acknowledge almost any of the above-described abnormal right shoulder findings leads the Court to conclude that the ALJ's finding that Plaintiff's right shoulder impairment is nonsevere is not supported by substantial evidence.

D.     **The ALJ's Errors Are Not Harmless And Reversal Is Required.**

In assessing a claimant's RFC, an ALJ must consider the "limitations and restrictions imposed by all of an individual's impairments, even those that are not 'severe.'" SSR 96-8p, 1996 WL 374184, at *5 (July 2, 1996). If an ALJ finds at least one severe impairment, then an ALJ's failure to find additional severe impairments at Step Two "[does] not constitute reversible error" if the ALJ "considers all of a claimant's impairments in the remaining steps of the disability determination." *Fisk v. Astrue*, 253 F. App'x 580, 583 (6th Cir. 2007), citing *Maziarz v. Sec'y of Health & Hum. Servs.*, 837 F.2d 240, 244 (6th Cir.1987). In other words, as long as the ALJ "finds at least one severe

impairment and analyzes all impairments in the following steps, the characterization of other impairments as severe or non-severe is 'legally irrelevant.'" *Deaner v. Comm'r. of Soc. Sec.*, 840 F. App'x 813, 817 (6th Cir. 2020) (quoting *Anthony v. Astrue*, 266 F. App'x 451, 457 (6th Cir. 2008)).

However, the harmless error rule "is predicated on the notion that the ALJ 'properly could consider claimant's [nonsevere impairments] in determining whether claimant retained sufficient residual functional capacity to allow [her] to perform substantial gainful activity.'" *Winn v. Comm'r of Soc. Sec.*, 615 F. App'x 315, 326 (6th Cir. 2015) (citing *Maziarz*, 837 F.2d at 244 (6th Cir. 1987)). The *Winn* court concluded that the ALJ's determination that the plaintiff had no severe mental impairments was not based on substantial evidence, and that the ALJ's RFC determination "did not consider [the plaintiff's] mental impairments in a meaningful way." *Winn*, 615 F. App'x at 325-26. Accordingly, the ALJ's error was not harmless and required reversal. *Id.* at 326.

Similarly, in *White v. Comm'r of Soc. Sec.*, the Sixth Circuit held that the ALJ reversibly erred by failing to find a significant mental impairment. 312 F. App'x 779, 787-88 (6th Cir. 2009). The *White* court explained that although the ALJ did not err in finding no severe mental impairments, the ALJ erred because he "gave no explanation for totally discounting the objective evidence of White's mental impairment in determining White's RFC." *Id.* at 787. The court found that the ALJ mischaracterized the evidence regarding the plaintiff's mental impairments and misstated a treating physician's reasons for prescribing antidepressant medication. *Id.* at 787-88. The court concluded that because the ALJ "did not accurately state the evidence used to support his finding, his

13

total discounting of the mental impairment is not supported by substantial evidence." *Id.* at 788. The court also concluded that because the hypothetical question (that restated the RFC) posed by the ALJ to the vocational expert did "not accurately portray White's limitations," the ALJ erred in relying on the vocational expert's answer to the question. *Id.* at 789. This was reversible error. *Id.* at 790.

This case is analogous to *Winn* and *White*. The ALJ stated at Step Two: "I considered all of [Plaintiff's] medically determinable impairments, including those that are not severe, when assessing [Plaintiff's] [RFC]." (AR, Doc. No. 8-2 at PageID 43.) But as discussed above, the ALJ applied the incorrect standard for evaluating the duration requirement, and ignored medical evidence regarding Plaintiff's right shoulder impairment. Thus, his determination that Plaintiff does not have a severe right shoulder impairment is both unsupported by substantial evidence and was reached without complying with 20 C.F.R. § 404.1509. *See White*, 312 F. App'x at 787-88.

It is true that, after concluding that Plaintiff's right shoulder impairment was nonsevere, the ALJ stated that he nevertheless accounted for the condition in the RFC: "I note, however, that as a result of the claimant's carpal tunnel syndrome (CTS), I have still imposed limitations on the use of the claimant's right hand that should accommodate any lingering effects of this injury." (AR, Doc. No. 8-2 at PageID 42.) But because the ALJ mischaracterized the record regarding Plaintiff's right shoulder impairment, this Court cannot conclude that the ALJ's RFC limitation for frequent handling and fingering adequately accounts for the evidence of Plaintiff's right shoulder impairment. Because the ALJ's RFC determination does not consider Plaintiff's right shoulder impairment "in

14

a meaningful way," these errors are not harmless and require reversal. *See Winn*, 615 F. App'x at 325-26.

## VI.   REMAND

Under Sentence Four of 42 U.S.C. § 405(g), the Court has authority to affirm, modify, or reverse the Commissioner's decision "with or without remanding the cause for rehearing." *Melkonyan v. Sullivan*, 501 U.S. 89, 99 (1991). Consequently, a remand under Sentence Four may result in the need for further proceedings or an immediate award of benefits. *E.g., Blakley*, 581 F.3d at 410; *Felisky v. Bowen*, 35 F.3d 1027, 1041 (6th Cir. 1994). The latter is warranted where the evidence of disability is overwhelming or where the evidence of disability is strong while contrary evidence is lacking. *Faucher v. Sec'y of Health & Human Servs.*, 17 F.3d 171, 176 (6th Cir. 1994).

A judicial award of benefits is unwarranted in the present case because the evidence of disability is neither overwhelming nor strong while contrary evidence is lacking. *Faucher*, 17 F.3d at 176. However, Plaintiff is entitled to an Order remanding this case to the Social Security Administration pursuant to Sentence Four of Section 405(g) for the reasons stated above.

On remand, the ALJ should further develop the record as necessary, particularly as to the severity of her right shoulder impairment, and evaluate the evidence of record under the applicable legal criteria mandated by the Commissioner's regulations and rulings and governing case law. The ALJ should evaluate Plaintiff's disability claim under the required five-step sequential analysis to determine anew whether Plaintiff was

under a disability and whether her application for Supplemental Security Income should be granted.

**IT IS THEREFORE ORDERED THAT**:

1. Plaintiff's Statement of Errors (Doc. No. 9) is GRANTED;

2. The Court REVERSES the Commissioner's non-disability determination;

3. No finding is made as to whether Plaintiff was under a "disability" within the meaning of the Social Security Act;

4. This matter is REMANDED to the Social Security Administration under Sentence Four of 42 U.S.C. § 405(g) for further consideration consistent with this Decision and Order; and

5. This case is terminated on the Court's docket.

*s/ Caroline H. Gentry*
Caroline H. Gentry
United States Magistrate Judge